# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


LUIS VELASCO,

     **Plaintiff,**

v.                                        **Civ. No. 01-0256 WPJ/LCS-ACE**

OFFICER PETE MONTEZ, et al.,

     **Defendants.**


## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Defendant Cass Mason's Motion for Summary Judgment on Qualified Immunity filed  October 1, 2002 *(Doc. 52)*, Defendant Daniel Ornelas' Motion for Summary Judgment on the Martinez Report filed September 27, 2002 *(Doc. 51)*, Defendant Pete Montez' Motion for Summary Judgment filed October 2, 2002 *(Doc. 54)*, and upon Plaintiff's Motion for Order to Appoint Interpreter filed December 17, 2002 *(Doc. 64).* Plaintiff is proceeding *pro se* and *in forma pauperis*.  The Court, having reviewed the Motions, the Responses, the Replies, the *Martinez* reports and Plaintiff's Response to the *Martinez* report, as well as applicable law, finds that Defendants' motions are well-taken and recommends that they be GRANTED.  The Court further finds that Plaintiff's Motion for Order to Appoint Interpreter is not supported by any applicable law, and recommends that this motion be DENIED.

# I.   BACKGROUND

## A.   Procedural history

1.      Plaintiff Luis Velasco, currently incarcerated at the Lincoln County Correctional Facility in Hobbs, New Mexico,  alleges that Defendants Pete Montez, Daniel Ornelas and Cass Mason applied excessive force while arresting Plaintiff, "in which Plaintiff's wrist was broke and permanently disfigured."  Compl. ¶2-3.  Plaintiff specifically alleges that on October 1, 1999, while arresting the Plaintiff, the Defendants "applied excessive force to the Plaintiff's person by twisting his body and one arm one way while twisting the other arm the other way braking [sic] the right-hand wrist.  Then deliberately twisting the broken wrist back the oppisite [sic] way causing a second brake [sic] of the bone."  Compl. at 2.  Plaintiff  brought a Complaint alleging that his Fourth, Fifth, Eight, and Fourteenth Amendment rights were violated by this conduct on March 5, 2001.  *Id*. at 3.  Defendants thereafter brought Motions to Dismiss[1], which the Magistrate Judge recommended granting with respect to the Plaintiff's Fifth, Eighth and Fourteenth Amendment claims.  *See* Magistrate Judge's Proposed Findings and Recommendation filed September 17, 2001 *(Doc. 34).*  The District Judge adopted the Proposed Findings and Recommendation by Order on January 15, 2002 and dismissed Plaintiff's Fifth, Eighth, and Fourteenth Amendment Claims.  *(Doc. 39).*

2.      The Court entered an Order on May 3, 2002 *(Doc. 42)* requiring that Defendants furnish the Court with a *Martinez* report, pursuant to *Martinez v. Aaron*, 570 F.2d 317, 320 (10th

---

[1]      The Motions to Dismiss included Defendant Pete Montez' Motion to Dismiss, filed June 1, 2001 (*Docs. 10 and 18*); Defendant Daniel Ornelas' Motion to Dismiss filed August 13, 2001 (*Doc. 24*); and Defendant Cass Mason's Motion to Dismiss filed August 21, 2001 (*Doc. 30*).

Cir. 1978). Defendants Montez, Mason, and Ornelas each filed a *Martinez* report pursuant to the Order of the Court. *See Docs. 45-48.* Plaintiff filed an Objection to the *Martinez* reports on September 5, 2002 *(Doc. 49).*[2]

**B.    Factual Background**

3.    Defendant Pete Montez is a member of the Police Department of the Town of Dexter, New Mexico. Aff. of Pete Montez (hereinafter, "Montez Aff.") ¶2. Officer Montez was dispatched to a residence in Dexter, New Mexico on October 6, 1999 at approximately 6:50 p.m. regarding a report of a possible violation of a domestic violence restraining order. Montez Aff. ¶3. Officer Montez met Maria Velasco at the residence. *Id.* Mrs. Velasco reported to Officer Montez that she had been living at the Roswell Refuge for Battered Adults with her fourteen-year old son Israel. Montez Aff. ¶4. Mrs. Velasco reported that she brought Israel into Dexter for band practice, and that her husband Luis Velasco had taken Israel from band practice. Montez Aff. ¶¶3-5. Mrs. Velasco showed Officer Montez a copy of a Restraining Order, which Officer Montez determined was still in effect after contacting dispatch.[3] Montez Aff. ¶5. Mrs. Velasco

---

[2]    In his Objection to the *Martinez* Reports, Plaintiff disputes the information provided in the *Martinez* Reports alleging that Plaintiff used his son as a shield. Plaintiff suggests that the Court review the videotape of the arrest, appended to Chief Mason's *Martinez* Report. *See* Mason *Martinez* Report Ex. 34; Plaintiff's Objection to Martinez Report filed September 5, 2002 *(Doc. 49).* The Court has reviewed the three videotapes. Plaintiff claims that his son was "at least 30 feet away from [me]" throughout the incident in question. The Court is unable to determine the precise distance from viewing of the videotapes. In any case, the Court will not consider that Plaintiff used his son as a shield. *See* Plaintiff's Objection to Martinez Report filed September 5, 2002 *(Doc. 49).*

[3]    An August 16, 1999 Order Prohibiting Domestic Violence from the Fifth Judicial District Court, County of Chavez was provided to the Court as Doc. 1 in Deputy Ornelas' *Martinez* Report. The Order specifically provides that Maria Velasco was "awarded physical and legal custody of . . . Luis Israel" and further provides that Luis Velasco shall have "no visitation under CASA report or further order of the Court." Ornelas *Martinez* Report Doc. 1.

related that Mr. Velasco had firearms. *Id*. Officer Montez thereafter traveled towards 7820 Donna Avenue.[4] Montez Aff. ¶6. While traveling, Officer Montez observed Mr. Velasco in his vehicle traveling at a high rate of speed. *Id*. Mr. Velasco would not stop his vehicle. *Id*. Officer Montez and other officers engaged their emergency equipment and pursued Mr. Velasco. *Id*.

    4.    Deputy Michael Herrington, an officer with the Chaves County Sheriff's Department, was advised by the Chaves County Sheriff's Office dispatcher of Officer Montez and his pursuit of Mr. Velasco. Ornelas *Martinez* Report Ex. 7 (Herrington Report of October 6, 1999).[5] Mr. Velasco was traveling in a red 1999 GMC Z-71 pickup truck bearing dealer tags. Ornelas *Martinez* Report Ex. 7. During the subsequent investigation, it was learned that the red truck was obtained earlier that day from the McMurtry Auto Plaza by Mr. Velasco for a test drive. Ornelas *Martinez* Report Ex. 16.[6] Deputy Herrington observed the red truck being driven

---

[4]    Although Officer Montez refers at one point to "7820 Dona Avenue," the Court notes that the address is more often referred to as "7820 Donna Avenue" throughout the *Martinez* reports, and will also refer to this address as "7820 Donna Avenue" for consistency.

[5]    Only admissible evidence maybe considered when evaluating a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.,*, 756 F.2d 1467, 1474 (10th Cir. 1985). To qualify as admissible, documents must be authenticated by and attached to an affidavit that meets to requirements of FED. R. CIV. PROC. 56(e) and the affiant must be person through whom the exhibits could be admitted into evidence. *See IHP, Inc. v. Mercantile Bank of Topeka*, 6 F.Supp.2d 1258, 1263 (D. Kan. 1998). Materials that do not satisfy the standards of Rule 56 are subject to a motion to strike. *See Noblett v. General Elec. Credit Corp.,* 400 F.2d 442, 445 (10th Cir. 1968). No such motion has been filed in this case. However, the Court notes that only those police reports authenticated by affidavit, thus meeting the requirements of Rule 56(e), are being considered by the Court in the instant summary judgment motion. Officer Herrington's report of October 6, 1999 is supported by his Affidavit of July 18, 2001, which is Exhibit 6 of the Ornelas *Martinez* report.

[6]    Deputy Lawrence L. Cox, an officer with the Chaves County Sheriff's Department submitted an affidavit in support of his Report dated October 6, 1999, which is Exhibit 15 of the Ornelas *Martinez* Report.

in a fast manner, making turns at high speeds on primarily unpaved dirt roads.  Ornelas *Martinez*

Report Ex. 7.  The pursuit of Mr. Velasco last approximately five minutes.  Ornelas *Martinez*

Report Ex. 16.

     5.     When Officer Montez arrived at Mr. Velasco's residence at 7820 Donna Avenue,

Mr. Velasco started to drive the pickup truck he was in around in circles at high rates of speed.

Montez Aff. ¶7.  Mr. Velasco hit the police vehicle of Hagerman Officer Chad Fulton with his

truck, and then chased Chaves County Deputy Sheriff Mike Herrington's vehicle.  Montez Aff.

¶7; Ornelas *Martinez* Report Ex. 7.  Mr. Velasco hit Deputy Herrington's vehicle from the rear

and then drove toward Officer Fulton's vehicle again.   Montez Aff. ¶7; Ornelas *Martinez* Report

Ex. 7.  Officer Fulton ran away from his vehicle.  *Id.*  After Officer Fulton ran away from his

vehicle, Mr. Velasco removed a twelve-gauge shotgun and ammunition from Officer Fulton's

vehicle.  Montez Aff. ¶8  Mr. Velasco, with his son Israel, walked toward his mobile home,

holding the shotgun in one arm.  Montez Aff. at 9.  The officers did not fire upon Mr. Velasco,

being concerned that Israel Velasco was in the line of fire.  Ornelas *Martinez* Report Ex. 7.  Mr.

Velasco entered his residence and slammed the door, after pushing Israel Velasco inside.  *Id.*  Mr.

Velasco yelled to the officers and said in Spanish that he would shoot the officers.  Montez Aff. at

9.  At that time, Deputy Herrington moved his vehicle, which was equipped with an eye witness

camera around to where he could clearly see the front door of the residence through the monitor.

Ornelas *Martinez* Report Ex. 7.[7]

     6.     Israel Velasco took the shotgun away from Mr. Velasco and brought it to the front

---

     [7]     As noted previously, the Court has reviewed the three videotapes of the arrest, which were appended to Chief Mason's *Martinez* Report as Exhibit 34

gate and left it on the ground, where Deputy Herrington recovered the shotgun.    Montez Aff. at

9; Ornelas *Martinez* Report Ex. 7.  The shotgun had been loaded with ammunition by Mr.

Velasco while he had the shotgun with him in his residence.  Ornelas *Martinez* Report Ex. 7.

Deputy Herrington accidentally discharged the shotgun into the ground while picking it up from

the ground.  *Id.*

7.      Police Chief Cass Mason, Director of the Department of Public Safety for the

Town of Hagerman, of the Hagerman Police, was notified and arrived at the scene at

approximately 8:00 p.m. Mason Memo. Ex. B and C.[8]    Because he had previous dealings with

Mr. Velasco, Chief Mason used a power-hailing device to talk to Mr. Velasco.  Mason Memo.

Ex. B. Chief Mason talked Mr. Velasco into leaving the residence.  Montez Aff. ¶10.  Mr.

Velasco and Israel Velasco approached Chief Mason and both came within about 8 to 10 feet of

Chief Mason.  Mason Memo. Ex. B.  Mr. Velasco began to run towards the trailer, and Chief

Mason ran after him, yelling that Mr. Velasco was under arrest.  Mason Memo. Ex. B.  A number

of officers rushed towards Mr. Velasco and followed him back into his mobile home.  Montez

Aff. ¶10.  Mr. Velasco tried to elude the officers as he ran towards his front door.  Pl. Response

to Montez Motion at 1.  The officers forced the door open; however, Mr. Velasco tried to slam

the door on the officers.  Ornelas *Martinez* Report Ex. 7.   Mr. Velasco slammed the front door

on Chief Mason's upper body.  Mason Memo. Ex. B. The officers again forced the door open and

Officer Fulton entered the kitchen area.  *Id.*  Mr. Velasco punched Officer Fulton in the face, and

continued fighting the officers as he was forced to the ground.  *Id.*  Deputy Ray Campos, an

---

[8]      Chief Mason's report of October 6, 1999 is supported by his Affidavit of October 1, 2002, which is Exhibit C of his Memorandum in Support of his Motion for Summary Judgment on Qualified Immunity.

officer with the Chaves County Sheriff's Department was one of the officers attempting to take

Mr. Velasco to the ground.  Ornelas *Martinez* Report Ex. 14 (Campos Report of October 6,

1999).[9]  Mr. Velasco continued resisting, even though he then complained that his arm was

broken.  *Id*.  Mr. Velasco claims that "while Officer's [sic] Ornelas and Macy [sic] twisted my

body forward to take me down, Officer Pete Montez twisted my right hand backwards very hard

until there was a cracking sound and I yelled in pain. . .  Right then I asked the officer's [sic] to

please let me go as they had already broken my arm.  Officer Pete Montez then stated to me in

Spanish, "Para que deveras digas que te lo quebre" meaning in English "so you can truthfully say

that I broke it."  Right when Officer Pete Montez said this to me, he angrily twisted my arm again

in the oppisite [sic] direction of the first brake [sic] until there was a second crunching sound."

Pl. Compl. at 3a.  In his Response to Chief Mason's Motion for Summary Judgment, Mr. Velasco

claims that  Officer Pete Montez "caused the second breakage to Mr. Velasco's *left* arm after Mr.

Velasco had been hand-cuffed."  Pl. Response to Mason Motion at 2 (emphasis supplied).  Mr.

Velasco was eventually cuffed and taken out of the residence.  Ornelas *Martinez* Report Ex. 14.

Mr. Velasco was assessed by Hagerman EMS personnel and his arm was splinted.  Mason Memo.

Ex. B.

     8.     Defendant Daniel Ornelas, an officer with the Chaves County Sheriff's Department

arrived at 7890 Donna Avenue on October 6, 1999, and took a position behind the house.  Aff. of

Daniel Ornelas (hereinafter, "Ornelas Aff.") ¶2.  Deputy Ornelas was not involved in physically

apprehending Mr. Velasco or handcuffing him.  Ornelas Aff. ¶3; Ornelas *Martinez* Report Ex. 7

---

     [9]     Deputy Campos' report of October 6, 1999 is supported by his Affidavit of July
18, 2002, which is Exhibit 13 of the Ornelas *Martinez* Report.

(Aff. Of Michael Herrington (hereinafter, "Herrington Aff.") ¶8). After Mr. Velasco was arrested, he was placed in the back of Deputy Ornelas' patrol car and transported to Eastern New Mexico Medical Center ("ENMMC") for medical assistance and then to the Chaves County Detention Center ("CCDC"). Ornelas Aff. ¶3. Deputy Ornelas claims that "[a]lthough traffic signals and normal curvature of the roads necessitated [his] having to turn [his] car, at no point, either en route to the ENMMC or back to the CCDC on October 6, 1999, did [he] intentionally swerve [his] patrol car to cause Plaintiff any further pain." Ornelas Aff. ¶4. Deputy Ornelas was followed by Ray Campos, a deputy with the Chaves County Sheriff's Department, who was the only Spanish-speaking officer at the scene. Ornelas *Martinez* Report Ex. 13 (Aff. of Ray Campos (hereinafter "Campos Aff.") ¶¶1,4). Deputy Campos did not observe Officer Ornelas swerving or otherwise driving his patrol car erratically. *Id*. Plaintiff claims that after his arrest, Officer Ornelas swerved his patrol vehicle while en route to ENMMC. Pl. Response to Ornelas Motion Ex.3. While at ENMMC, Deputy Campos read Mr. Velasco his rights in Spanish. Ornelas *Martinez* Report Ex. 14.

      9.     After Mr. Velasco was apprehended, Officer Montez assisted in taking statements from witnesses including Carlos Leuvano, Israel Velasco and Maria Velasco. Montez Aff. ¶11. Officer Montez claims he did not talk to, touch, or come into contact with Mr. Velasco. Montez Aff. ¶¶ 12-13.

      10.    A report of the radiologist at ENMMC indicates that two radiologic views were taken of Mr. Velasco's right forearm. Ornelas *Martinez* Report Ex. 30 at CCD-0212. The radiologic noted that "[a] comminuted fracture is present in the mid shaft of the right radius with posterior angulation at the fracture apex. The other bony structures appear to be intact. There

appears to be effusion between the proximal ends of the radius and ulna which is probably congenital." *Id.*   Mr. Velasco's right arm was placed in a cast at the ENMMC Castroom. Ornelas *Martinez* Report Ex. 30 at CCD-0210.  Mr. Velasco was released from ENMMC for transport to the CCDC.

11.     A follow up report by James J. Castle, D.O., dated February 11, 2000, indicates that Mr. Velasco's cast was removed.  Ornelas *Martinez* Report Ex. 30 at CCD-0202.  Dr. Castle noted that x-rays taken on that date showed the fracture, a midshaft spiral type fracture of the right radius, was essentially healed.  *Id.*  Dr. Castle noted that the fracture line was almost completely obliterated and that position and alignment were excellent.  *Id.*  Dr. Castle also noted that Mr. Velasco "has a congenital synostosis of the proximal radius and ulna bilaterally, with his forearms being rather fixed in a pronated fashion.  This is true of both forearms."  *Id.*  Dr. Castle discharged Mr. Velasco from his case at that time.  *Id.*  Numerous Medical Encounter Forms indicate that Mr. Velasco's right arm was frequently checked and he was treated for complaints of pain in his right arm while at the CCDC.  *See, e.g.,* Ornelas *Martinez* Report Ex. 30 at CCD-02020072-0074, CCD-0076-0094; CCD-0104-0110.   Plaintiff alleges that the second break to his left arm caused his arm to be "in a deformity shape as to a normal arm, such as his right hand which looks normal now, he is saddled for life with this deformity."  Pl. Response to Mason Motion at 4.

12.     Mr. Velasco was charged by Criminal Information of the felony crime of Count 1, Aggravated Assault on a Peace Officer; Count 2, Aggravated Assault on a Peace Officer; Count 3, Aggravated Battery on a Peace Officer, and County 4, Aggravated Vehicle Burglary, for which he pled guilty pursuant to a Plea and Disposition Agreement on April 3, 2000.  Ornelas *Martinez*

Report Ex. 30.  Pursuant to the Judgment, Sentence and Commitment filed April 7, 2000 in the

Chaves County District Court, before the Honorable William P. Johnson, Mr. Velasco was

sentenced to three years of incarceration followed by two years on parole for Counts 1 and 2; to

eighteen months incarceration to be followed by one year of parole for Count 3; and to nine years

incarceration to be followed by two years on parole for Count 4.  Ornelas *Martinez* Report Ex.

30; Mason Memo. Ex. D.  The Court suspended the sentence except for four years of

incarceration to be followed by two years of parole, and placed Mr. Velasco on probation for the

suspended portion of his sentence to run concurrently with the two years' period of parole.  *Id.*

## II.   SUMMARY JUDGMENT STANDARD

13.    A motion for summary judgment is appropriate only if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law."*Jones v. Denver Post Corp.*, 203 F.3d  748, 751 (10th Cir. 2000); Fed. R. Civ.

P. 56(c).  The Court examines the record and makes all inferences in the light most favorable to

the non-moving party.  *Munoz v. St. Mary-Corwin Hosp.* 221 F.3d 1160, 1164 (10th Cir. 2000).

Summary judgment is proper "[w]here the record, taken as a whole, could not lead a rational trier

of fact to find for the non-moving party."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986)(citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S.

253, 289 (1968)).  The party opposing summary judgment "must do more than simply show that

there is some metaphysical doubt as to the material facts"; the nonmoving party must come

forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S.

at 586-87 (citing FED. RULE CIV. P. 56(e)).  In addition, where the non-moving party will bear the

burden of proof at trial on a dispositive issue, "that party 'must go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Entry of summary judgment is mandated 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

14.     When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . .the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. FED. RULE CIV. P. 56(e);  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(internal citations omitted).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.  On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Id*. at 588 (internal citations omitted).

15.     The court, however, "reviews summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions" because of the purposes behind qualified immunity. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1311-12 (10th Cir. 2002) (quoting *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001)).  The Tenth Circuit has noted that "[w]hen a § 1983 defendant raises the defense of qualified immunity on summary

11

judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the alleged violation occurred.  *Olsen*, 312 F.3d at 1312 (citing *Farmer v. Perrill,* 288 F.3d 1254, 1259 (10th Cir. 2002)).  If the plaintiff does not satisfy either of the prongs of this test, the Court must grant the defendant qualified immunity. *Olsen*, 312 F.3d at 1312 (citing *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001)). If the plaintiff demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that no  genuine issues of material fact exist and that the defendant is entitled to judgment as a matter of law. *Id.*   The defendant, therefore, still bears the summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. *Olsen,* 312 F.3d at 1312 (citing *Farmer*, 288 F.3d at 1259). Where the record demonstrates an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied." *Olsen,* 312 F.3d at 1312 (citing *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991)).

### III.   ANALYSIS

16.    Before addressing an excessive use of force claim, the Court must examine the context in which the claim arises. *Austin v. Hamilton*, 945 F.2d 1155, 1158 (10th Cir. 1991). Where an excessive force claim arises in the context of an arrest of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1988).   "Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment." *Medina v.*

*Cram*, 252 F.3d 1124, 1131(10th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 395

(1989)). The reasonableness of the officer's actions must be assessed from the officer's vantage

point at the scene of the alleged violation. *Saucier v. Katz,* 533 U.S. 194, 205; *Graham*, 490 U.S.

at 396-97 (wherein the Court noted that "the calculus of reasonableness must embody allowance

for the fact that police officers are often forced to make split-second judgments--in circumstances

that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a

particular situation.").

   17.  The Supreme Court in *Graham* set forth the appropriate test for determining the

reasonableness of force used, noting:

> Determining whether the force used to effect a particular seizure is "reasonable"
> under the Fourth Amendment requires a careful balancing of the nature and quality
> of the intrusion on the individual's Fourth Amendment interests against the
> countervailing governmental interests at stake.  Our Fourth Amendment
> jurisprudence has long recognized that the right to make an arrest or investigatory
> stop necessarily carries with it the right to use some degree of physical coercion or
> threat thereof to effect it.  Because the test of reasonableness under the Fourth
> Amendment is not capable of precise definition or mechanical application,
> however, proper application requires careful attention to the facts and
> circumstances of each particular case, including the severity of the crime at issue,
> whether the suspect poses an immediate threat to the safety of the officers or
> others, and whether he is actively resisting arrest or attempting to evade arrest by
> flight.

*Graham*, 490 U.S. at 396 (internal citations omitted).  Thus, "[t]he 'reasonableness' of a particular

use of force must be judged from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S.1, at

20-22 (1968)).  The standard is an objective one.  *Graham* at 397.

   18.  The threshold inquiry a court must undertake in a qualified immunity analysis is

whether plaintiff's allegations, if true, establish a constitutional violation.  *Hope v. Pelzer*, 122 S.

Ct. 2508, 2513 (2002)(citing *Saucier*, 533 U.S. at 201).  The Supreme Court described the

proper inquiry in a case where qualified immunity is asserted as a defense to an excessive force

claim as such:

> In a suit against an officer for an alleged violation of a constitutional right, the
> requisites of a qualified immunity defense must be considered in proper sequence.
> Where the defendant seeks qualified immunity, a ruling on that issue should be
> made early in the proceedings so that the costs and expenses of trial are avoided
> where the defense is dispositive. Qualified immunity is an entitlement not to stand
> trial or face the other burdens of litigation.  The privilege is an immunity from suit
> rather than a mere defense to liability;  and like an absolute immunity, it is
> effectively lost if a case is erroneously permitted to go to trial. As a result, we
> repeatedly have stressed the importance of resolving immunity questions at the
> earliest possible stage in litigation.

*Saucier*, 533 U.S. at 200 (internal citation omitted).  The initial inquiry is, when taken in the light

most favorable to the party claiming the injury, do the facts alleged show the officer's conduct

violated a constitutional right?  *Id*. at 201.  If the court determines that no constitutional right

would have been violated were the allegations established, there is no necessity for further

inquiries concerning qualified immunity.  *Id*.  If a constitutional violation could be made out on a

favorable view of the parties' submissions, the court must then determine whether the right was

clearly established, in light of the specific context of the case.  *Id*.  The degree of force which may

be used thus must be determined in light of the facts of the case.  *Saucier*, 533 U.S. at 201.

**A.**     **Whether Chief Mason is entitled to summary judgment on the basis of qualified
immunity.**

19.     As an initial matter, the Court considers Defendant Cass Mason's motion for

summary judgment based on qualified immunity.  *Saucier*, 533 U.S. at 200 (internal citation

omitted).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of

litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit

14

rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id* .  The Court must first determine whether, when taken in the light most favorable to the party claiming the injury, the facts alleged show that Chief Mason's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201. To determine whether a plaintiff can overcome the qualified immunity defense, the Court must first "determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then [the Court must] decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." *Roska v. Peterson*, 304 F.3d 982, 989 (citing *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996)). As the Tenth Circuit has noted, "[o]rder is important; we must decide first whether the plaintiff  has alleged a constitutional violation, and only then do we proceed to determine whether the law was clearly established." *Roska*, 304 F.3d at 389 (citing *Saucier*, 533 U.S. at 200).

20.     After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).   In order for Chief Mason to be held liable, the Court must find that Plaintiff has sufficiently alleged an underlying constitutional violation.  *Saucier*, 533 U.S. at 200.  Under the Fourth Amendment, citizens are guaranteed the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1988).  The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Graham*, 490 U.S. at 396.

21.     If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's

unlawful conduct. *Medina*, 252 F.3d at 1128 (citing *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Medina*, 252 F.3d at 1128 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The Tenth Circuit has observed that "[t]his two-step analysis 'is designed to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit. If the plaintiff fails to satisfy *either* part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128 (internal citations omitted). Thereafter, if the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Id*.

      **1.**    **Whether the allegations, if proven, would demonstrate an underlying constitutional violation.**

      22.    It is undisputed that Chief Mason was not physically involved in the arrest of Mr. Velasco, and it is undisputed that Chief Mason was not involved in the use of force against Mr. Velasco. *See* Pl. Response to Cass Mason's Motion for Summary Judgment at 1. Plaintiff specifically claims that Chief Mason "was present when the officer broke Mr. Velasco's arm" and witnessed this incident. *Id*. Plaintiff concedes that Chief Mason may not be held vicariously liable for the breaking of his arm. *Id*. at 3. Plaintiff, however, claims that Chief Mason should be denied qualified immunity and should be held liable for failing to prevent the second break of his arm. *Id*. Although Plaintiff alleged in his Complaint that he yelled and asked the officers not to

16

hurt him after the first fracture of his arm, in his Response to Chief Mason's Motion for Summary

Judgment, Mr. Velasco stated:

> Mr. Velasco arm was broke in (2) place's [sic].  The first breakage was when he
> was rushed apprehended and cuffed.  Mr. Velasco claims that the second breakage
> came from Officer Pete Montez after Mr. Velasco had been cuffed.  All this time
> Chief Mason was witnessing this incident.  Mr. Velasco claims that he yelled in
> pain at Officer Montez *after* the second breakage.  And told him not to hurt him
> anymore.

Pl. Response to Mason Motion at 1 (emphasis supplied).  Although it is not clear whether Plaintiff

indeed yelled in pain before or after the alleged second break of his arm, this fact is not material in

the Court's inquiry as to whether Chief Mason participated in a constitutional violation.

23.     Mr. Velasco's claims against Chief Mason are premised upon Chief Mason's

presence when Mr. Velasco's arm was allegedly broken for the second time and upon Chief

Mason's failure to prevent the alleged second break.  The Court must therefore first determine

whether, when taken in the light most favorable to the Mr. Velasco, the facts as alleged show that

Chief Mason's failure to prevent the any second break of Mr. Velasco's arm violated a

constitutional right.  *See Saucier*, 533 U.S. at 201.  The Fourth Amendment standard requires

inquiry into the factual circumstances of every case; relevant factors include the crime's severity,

the potential threat posed by the suspect to the officer's and others' safety, and the suspect's

attempts to resist or evade arrest. *Medina,* 252 F.3d at 1131 (citing *Graham*, 490 U.S. at 396).

The reasonableness standard is "clearly established" in the context of § 1983 actions. *Medina*, 252

F.3d at 1131.

24.     To establish a supervisor's liability under § 1983, Plaintiff must show that "an

affirmative link exists between the constitutional deprivation and either the supervisor's personal

17

participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*,

108 F.3d 1296, 1302 (10th Cir. 1997)(internal citation omitted).  Plaintiff has conceded that Chief

Mason did not personally participate in the alleged second breaking of his arm.  Pl. Response to

Mason Motion at 2.  Plaintiff has failed to demonstrate any affirmative link between the alleged

second breaking of his arm and any exercise of control or direction or failure to supervise by Chief

Mason.  *See generally,* Pl. Response to Mason Motion.  The alleged second breaking of Mr.

Velasco's arm occurred either just prior to or after Mr. Velasco cried out in pain from the first

break of his arm.  Given the immediacy of the alleged second breaking, it is not apparent that any

affirmative link exists between the alleged second break and any failure of Chief Mason to

exercise control over or supervise Officer Montez. *See generally, Holland v. Harrington*, 268

F.3d 1179, 1187 (10th Cir. 2001). Assuming that the allegations as asserted by Plaintiff are true,

and viewing the record in the light most favorable to the Mr. Velasco, the facts as alleged do not

show that Chief Mason's failure to prevent the any second break of Mr. Velasco's arm violated a

constitutional right.  *See Saucier*, 533 U.S. at 201.   Plaintiff alleges only that Chief Mason "was

present throughout [his] arrest and did nothing to stop" Officer Montez from breaking his arm.

Pl. Response to Mason Motion Ex. 1.  If no constitutional right would have been violated were

the allegations established, there is no necessity for further inquiries concerning qualified

immunity.[10]  *Saucier*, 533 U.S. at 201.  Therefore, I recommend that the Court find that Chief

---

[10]    Given that any liability of Chief Mason is premised upon an underlying
constitutional violation, Chief Mason may also be entitled to summary judgment on the basis that
Plaintiff's § 1983 claims call into question an essential elements of crimes of which he has been
convicted, and are thus barred under *Heck v. Humphrey*, 512 U.S. 477, 486-88 and n6 (1994).
This issue is discussed in detail in the section of my Proposed Findings and Recommendation
dealing with the claims against Officer Montez.

Mason entitled to summary judgment on the basis of qualified immunity. [11]

**B.    Whether Officer Montez is entitled to summary judgment.**

25.    Plaintiff alleged that Officer Montez used excessive force in breaking his arm a second time, after he was handcuffed. Pl. Response to Pete Montez' Motion for Summary Judgment (hereinafter, Pl. Response to Montez Motion) at 2; Pl. Response to Mason Motion Ex. 1. In his Affidavit, Plaintiff specifically avers that "Officer Pete Montez was present during my arrest and did break my arm a second time. While under color of law." Pl. Response to Montez Motion Ex. 2. Officer Montez claims that he was not involved in the apprehension. Ornelas *Martinez* Report Ex. 7.

**1.    Whether the officers used excessive force in breaking Plaintiff's arm the first time.**

26.    Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham*, 490 U.S. at 395. The reasonableness of the officers' action must be assessed from the officer's vantage point at the scene of the alleged violation. *Saucier*, 533 U.S. at 205; *Graham*, 490 U.S. at 396-97. The right to make an arrest or investigatory stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to

---

[11]    While the Tenth Circuit in *Olsen* remarked that "summary judgment motions may not be granted on any excessive force claims under § 1983 for which any genuine issue of material fact remains -- regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation," the United States Supreme Court in *Saucier* noted that adopting the approach of denying summary judgment any time a material issue of act remains on the excessive force claim could "undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Compare Olsen,* 312 F.3d at 1314 (citing *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir.1997)) *with Saucier,* 533 U.S at 202 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). In any case, the Court finds no genuine issue of material fact on the issue of excessive force, as noted herein below.

effect" the arrest.  *Graham,* 490 U.S. at 396 (internal citations omitted).  In evaluating the

reasonableness of the force used, the Court should view the facts and circumstances of each case,

"including the severity of the crime at issue, whether suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight."  *Id.*  This standard is an objective one.  *Id.*  Reasonableness must be judged from

the perspective of a reasonable officer on the scene.  *Id.* at 397.

27.     Plaintiff does not dispute that he engaged in a chase with police officers while

driving a vehicle taken from a car dealership for a test drive (Ornelas *Martinez* Report Ex. 7 and

16), that he had his fourteen-year old son with him during the chase and subsequent stand-off with

police, despite the existence of an order of the Court prohibiting him from having contact with his

son (Ornelas *Martinez* Report Ex. 7; Plaintiff's Objection to Martinez Reports *(Doc. 49))*; that he

hit the vehicles of both Deputy Herrington and Officer Fulton with the truck he was driving

(Montez Aff. ¶7; Ornelas *Martinez* Report Ex. 7); that he took the service shotgun from Officer

Fulton's vehicle (Montez Aff. ¶8); that he attempted to load the shotgun (Ornelas *Martinez*

Report Ex. 7); that he attempted to elude the police (P. Response to Montez Motion at 1); that he

slammed the door on the officers (Mason Memo. Ex. B; Ornelas *Martinez* Report Ex. 7); that he

punched Officer Fulton in the face (Ornelas *Martinez* Report Ex. 7); and that he resisted being

brought down and handcuffed (Ornelas *Martinez* Report Ex. 14).    Plaintiff does not dispute that

he was convicted of two counts of aggravated assault on a peace officer, one count of aggravated

battery on a peace officer, and one count of aggravated vehicle burglary.  Ornelas *Martinez*

Report Ex. 32.

28.     The Plaintiff in this case has not disputed that he took Officer Fulton's shotgun.

Montez Aff. ¶8. Various courts have recognized the reasonable of the use of force where a suspect is believed to pose a threat of physical harm, even where the force used is deadly.  *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985) (noting that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon . . . deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."); *Wilson v. Meeks (Wilson II)*, 98 F.3d 1247, 1253-54 (10th Cir. 1996); *Wilson v. Meeks,  (Wilson I)*, 52 F.3d 1547, 1552-53 (10th Cir. 1995)(wherein the Tenth Circuit reversed the denial of summary judgment in favor of an officer who claimed use of deadly force was not excessive where the plaintiff allegedly held a gun and the officer heard a cocking sound).  *See also,  Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)(where the Sixth Circuit upheld a grant of summary judgment in favor of a police officer who used of deadly force in attempting to stop the unarmed plaintiff, who had led the police on a car chase, noting that  "even unarmed, [the plaintiff] was not harmless; a car can be a deadly weapon."); *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991)(wherein the Fifth Circuit reversed the denial of summary judgment against officers who used deadly force against an unarmed plaintiff in a vehicle which was "totally surrounded" by police).  Evaluating each of the factors described by the Court in *Graham,* including the severity of the crimes at issue, the undisputed fact that Plaintiff took a service shotgun from an officer and was armed, that Plaintiff hit two officers' vehicles with a truck he took from a car dealership, the presence of Plaintiff's young son during the chase and stand-off with officers, and Plaintiff's admission that he evaded and resisted arrest,  it is apparent as a matter of law that the amount of forced used by the

21

Defendants was objectively reasonable.  *See generally, Graham,* 490 U.S. at 396.

> **2.      Whether Officer Montez used excessive force in breaking Plaintiff's arm a second time.**

29.      Having found that excessive force was not used in the first break of Plaintiff's arm, the Court turns to the question of whether excessive force was used in the alleged second break of Plaintiff's arm.   Evaluating the *Graham* factors, it is apparent that breaking Plaintiff's arm a second time after he was handcuffed would not be objectively reasonable.  *See generally, Graham,* 490 U.S. at 396.

30.      However, Plaintiff has failed to support his contention that any second breakage of his arm occurred.  In his Affidavit in support of his Response to the Montez summary judgment motion, Plaintiff avers that Officer Montez "was present during my  arrest and did break my arm a second time while under the color of law."  Pl. Response to Montez Motion Ex. 2. In this same Response, Plaintiff alleges that "Office Pete Montez caused the second breakage to Mr. Velasco's *left* arm after Mr. Velasco had been cuffed."  Pl. Response to Montez Motion at 2.  Plaintiff alleges that the second break to his left arm caused his arm to be "in a deformity shape as to a normal arm, such as his right hand which looks normal now, he is saddled for life with this deformity."  Pl. Response to Mason Motion at 4.  The report of the radiologist at ENMMC indicates that two radiologic views were taken of Mr. Velasco's right forearm after his arrest; the radiologist found "[a] comminuted fracture is present in the mid shaft of the right radius with posterior angulation at the fracture apex.  The other bony structures appear to be intact."  Ornelas *Martinez* Report Ex. 30 at CCD-0212.  The orthopedic report of Dr. Castle, dated February 11, 2000, noted that x-rays taken on that date showed the fracture, a midshaft spiral type fracture of

the right radius, was essentially healed.  Ornelas *Martinez* Report Ex. 30 at CCD-0202.  Plaintiff's

own affidavits and responses are inconsistent as to which arm was broken, and as to when the

alleged second break occurred.  *See*  Pl. Response to Montez Motion Ex. 2;  Pl. Response to

Montez Motion at 2; Pl. Response to Mason Motion at 4.   Plaintiff has produced no evidence

beyond his own conflicting and conclusory responses, affidavits, and the Complaint in support of

his contention that Officer Montez broke his arm a second time.  All of the medical evidence

provided indicates that Plaintiff suffered a single fracture to the right arm.  Ornelas *Martinez*

Report Ex. 30 at CCD-0212.; Ornelas *Martinez* Report Ex. 30 at CCD-0202.  Plaintiff claims that

he now suffers some deformity of the left arm ("in a deformity shape as to a normal arm,") and

admits that "his right hand . . . looks normal now."  Pl. Response to Mason Motion at 4.

Although Plaintiff's own allegations are conflicting, it would appear that Plaintiff claims that

Officer Montez broke his *left* arm after Plaintiff was handcuffed, and after Plaintiff's right arm had

been broken during the struggle with the various officers.

      31.   The Court is aware that Plaintiff is proceeding *pro se*, and has construed Plaintiff's

Complaint, affidavits, and responses liberally, and makes all inferences in Plaintiff's favor.  *See*

*Ledbetter v. City of Topeka*, 2003 U.S. App. LEXIS 2134*, *5 (10th Cir. February 6, 2003*)*;

*Munoz*, 221 F.3d at 1164.  Nevertheless, Plaintiff's failure to be consistent in his own assertions as

to *whic*h arm was broken, and when the second break occurred is particularly troubling given that

the *only* evidence which supports Plaintiff's allegations are his own conclusory and inconsistent

statements. Plaintiff has failed to meet his own minimal summary judgment burden.  Plaintiff

"must do more than simply show that there is some metaphysical doubt as to the material facts";

Plaintiff bears the burden of coming forward with "specific facts showing that there is a genuine

issue for trial." *Matsushita*, 475 U.S. at 586-87 (citing FED. RULE CIV. P. 56(e)).   While the

Tenth Circuit has noted that "material factual disputes involving the 'immediate connection' of an

officer's use of force in response to 'a suspect's threat of force'" will prevent a court from granting

summary judgment, no such factual dispute is apparent in this case. *Olsen,* 312 F.3d at 1314

(citing *Muskogee*, 119 F.3d at 840).  Plaintiff has failed to come forward with any evidence to

support the contention that Plaintiff's left arm was broken, nor has he come forward with any

evidence that his right arm was broken a second time, other than his own conflicting and

conclusory responses and affidavits.

        32.    While a *Martinez* report is treated like an affidavit, the Court "is not authorized to

accept the factual findings of the prison investigation when the plaintiff has presented conflicting

evidence."  *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995).  However, as noted above,

in this case, only those police reports meeting the requirements of Rule 56(e) and authenticated by

affidavit, were considered by the Court in making the recommendation on the instant summary

judgment motions.   The Tenth Circuit has noted that:

> Material factual disputes cannot be resolved at summary judgment based on
> conflicting affidavits. To come within the protection of this rule, however, the
> nonmovant's affidavits must be based upon personal knowledge and set forth facts
> that would be admissible in evidence;  conclusory and self-serving affidavits are not
> sufficient. Likewise, only material factual disputes preclude summary judgment;
> factual disputes about immaterial items are irrelevant.  Affidavits or other evidence
> offered by a nonmovant must create a genuine issue for trial; viewing the evidence
> in the light most favorable to the nonmovant, it is not enough that the evidence be
> "merely colorable" or anything short of "significantly probative." This is because
> when "the record taken as a whole could not lead a rational trier of fact to find for
> the non-moving party, there is 'no genuine issue for trial.'"

*Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)(internal citations omitted).  In this case,

the only evidence supporting Plaintiff's contentions that a second break of his arm occurred and

that such a break was caused by Officer Montez are Plaintiff's own affidavits.  *See* Pl. Response

to Montez Motion Ex. 2, wherein Plaintiff avers that Officer Montez "was present during my

arrest and did break my arm a second time while under the color of law."  Plaintiff's affidavits,

being conclusory and self-serving, are not sufficient to raise a genuine issue of material fact.  *See*

*Hall*, 935 F.2d at 1111.  The medical evidence provided suggests that no second break occurred,

and Plaintiff has presented no evidence conflicting with the medical information provided in the

*Martinez* report.  *See generally, Hayes*, 70 F.3d at 1146; Ornelas *Martinez* Report Ex. 30 at

CCD-0210, -0212, -0202, -0072-74, -0076-0094, -0104-0110.  The affidavits provided by

Plaintiff have failed to create a genuine issue for trial.   *Hall*, 935 F.2d at 1111.

      33.      Deputy Ornelas also notes that Plaintiff pled guilty to two (2) counts of

Aggravated Assault on a Peace Officer[12] and one (1) count of Aggravated Battery on a Peace

Officer[13]  relating to the events which occurred on October 6, 1999 wherein Plaintiff was

injured.[14]  Deputy Ornelas argues that Plaintiff's claims are therefore barred by *Heck v.*

*Humphrey*, wherein the Supreme Court held that "in order to recover damages for allegedly

---

[12]      Pursuant to N.M. Stat. Ann. § 30-22-22,  an aggravated assault upon a peace officer consists of "(1) unlawfully assaulting or striking at a peace officer with a deadly weapon while he is in the lawful discharge of his duties; (2) committing assault by threatening or menacing a peace officer who is engaged in the lawful discharge of his duties by a person wearing a mask, hood, robe other covering upon the face, head or body, or while disguised in any manner so as to conceal identity; or  (3) willfully and intentionally assaulting a peace officer while he is in the lawful discharge of his duties with intent to commit any felony."  N.M. Stat. Ann. § 30-22-22.

[13]      Pursuant to N.M. Stat. Ann. § 30-22-25, "[a]ggravated battery upon peace officer consists of the unlawful touching or application of force to the person of a peace officer with intent to injure that peace officer while he is in the lawful discharge of his duties."  N.M. Stat. Ann. § 30-22-35.

[14]      Although the *Heck* issue was raised by Deputy Ornelas, I address this argument in this section, as the argument is most applicable to the claims against Officer Montez.

unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-88 and n6 (1994).[15]  The Fifth Circuit has concluded that force cannot be excessive as a matter of law under *Heck*, where the plaintiff was convicted of aggravated assault upon the defendant police officer, even though the alleged beating took place after the plaintiff was taken to a county jail, thereby requiring that summary judgment be granted in favor of the defendant.  *See Sappington v. Bartee*, 195 F.3d 234, 236-37 (5th Cir. 1999). The Tenth Circuit has not addressed whether *Heck* bars a §1983 claim by a plaintiff who has been convicted of assaulting or battering a police officer. While it is unclear as to how the Tenth Circuit would apply *Heck* in this scenario, I note that an element of both of the crimes for which Plaintiff was convicted is that the officer "is in the lawful discharge of his duties."  *See* N.M. Stat. Ann. §§ 30-22-22 and 30-22-25.  Plaintiff was convicted of aggravated assault upon Deputy Herrington, Officer Montez, and Officer Fulton.  Ornelas *Martinez* Report Ex. 32 (Criminal Information filed March 14, 2000 in No. CR-2000-82, *New Mexico v. Velasco*).  Therefore, Plaintiff's claim that Officer Montez used excessive force, which requires an underlying constitutional violation, calls into question an essential element of a crime

---

[15]     *But see Martinez v. City of Albuquerque*, 184 F.3d 1123, 1126-27 (10th Cir. 1999)(noting that a "finding that the police officers utilized excessive force to arrest [the plaintiff] would in no manner demonstrate the invalidity of [the plaintiff's] state court conviction for resisting arrest under these circumstances," and concluding that the rule announced in *Heck* would thus not apply.  *Martinez* is, however, distinguishable from this case, as the Court in *Martinez* specifically found that the plaintiff's excessive force claim did not call into question any element of the crime of which the plaintiff had been convicted.  *Id.*

of which he was convicted.  Because Plaintiff has failed to prove that the conviction or sentence

has been reversed on direct appeal, expunged by executive order, declared invalid by a state

tribunal authorized to make such determination, or called into question by a federal court's

issuance of a writ of habeas corpus, it is apparent that Plaintiff's § 1983 claims against Officer

Montez are precluded.  *See Heck v. Humphrey*, 512 U.S. 477, 486-88.  I therefore recommend

that the Court find that Officer Montez is entitled to summary judgment as a matter of law. *See*

*Sappington,* 195 F.3d at 236-37.

**C.      Whether Deputy Ornelas is entitled to summary judgment.**

34.      Plaintiff alleges that Deputy Ornelas "is responsible for his actions during the

course of him transporting [Plaintiff} . . . to E.N.M.C.E.R. [Eastern New Mexico Medical Center

Emergency Room]."[16]  Pl. Response to Ornelas Motion for Summary Judgment (hereinafter, Pl.

Response to Ornelas Motion") at unnumbered page 2.  In his Affidavit in support of his Response,

Plaintiff claims that "after my arrest, Officer Daniel Ornelas did transport me to Eastern New

Mexico Medical Center Emergency Room.  And yes Officer Ornelas was swerving his patrol

vehicle intentionally en route to E.N.M.M.C.E. [sic] to inflict more injury to me."  Pl. Response

to Ornelas Motion Ex. 3.  Plaintiff does not dispute that Deputy Ornelas was not involved in

physically apprehending Mr. Velasco or handcuffing him.  Ornelas Aff. ¶3.  The parties agree that

Deputy Ornelas transported the Plaintiff in his patrol car to the ENMMC and then to the CCDC

after his arrest on October 6, 1999.  Ornelas Aff. ¶3; Pl. Response to Ornelas Motion Ex. 3.

---

[16]      In his Response, Plaintiff claims that Deputy Ornelas is responsible for his actions
while transporting Plaintiff to the ENMMC.    To the extent that Plaintiff may have claimed that
Deputy Ornelas was responsible for any alleged excessive use of force related to his arrest, it
appears that Plaintiff has abandoned such claims.  In any case, the Court's analysis with regard to
use of force in arresting Plaintiff set forth above would equally apply to Deputy Ornelas.

Plaintiff's excessive force claims against Deputy Ornelas apparently arise out of his contention
that Deputy Ornelas drove erratically while transporting Plaintiff to the ENMMC in his patrol car
"deliberately to cause [Plaintiff] pain and hear [him] cry out in pain and beg for relief."   Compl. at
3b.

      35.     The relevant inquiry, therefore, is whether Deputy Ornelas' driving constituted an
unreasonable use of force, assessing his driving from his vantage point at the scene of the alleged
violation.  *See Saucier*, 533 U.S. at 205; *Graham,* 490 U.S. at 396-97.  *See also, Barrie v.
Grand County*, 119 F.3d 862, 866 (10th Cir. 1997)(wherein the Tenth Circuit noted that the
Fourth Amendment bars the use of excessive force during a period of detention immediately
following arrest and before the person is taken before a judicial official)(citing *Austin v. Hamilton*,
945 F.2d 1155, 1160 (10th Cir. 1991)).  Plaintiff has provided the Court with no authority to
suggest that Deputy Ornelas' driving could constitute an unreasonable use of force.  Even if
Plaintiff did indeed cry out in pain, it is not apparent that Deputy Ornelas' alleged erratic driving
would constitute an unreasonable use of force.  *See, e.g., Rodriguez v. Farrell*, 294 F.3d 1276,
1279 n.4 (11th Cir. 2002)(Plaintiff did not demonstrate excessive force from handcuffing,
although Plaintiff "moaned or grunted in pain while in transport" and told officers at the station
that he was in pain).  Moreover, it is not apparent that Deputy Ornelas' alleged erratic driving
would constitute an *unconstitutional* use of force.  Taking the record in the light most favorable
to Plaintiff, it does not appear that Deputy Ornelas' driving was unreasonable.

      36.     Moreover, the *only* evidence which supports Plaintiff's allegation that Deputy
Ornelas swerved his patrol car or drove erratically for the purpose of causing Plaintiff further pain
are Plaintiff's own conclusory statements. Deputy Ornelas has averred that "[a]lthough traffic

signals and normal curvature of the roads necessitated [his] having to turn [his car], at no point, either en route to the ENMMC or back to the CCDC on October 6, 1999 did [he] intentionally swerve [his] patrol car to cause Plaintiff any further pain." Ornelas Aff. ¶4. Deputy Ornelas was followed by Deputy Campos, who also stated that he did not observe Officer Ornelas swerving or otherwise driving his patrol car erratically." Campos. Aff. ¶¶1, 4. Plaintiff has failed to support his conclusory statement that Deputy Ornelas drove erratically for the purpose of causing Plaintiff further pain.

37.    Plaintiff has thus failed to meet his own minimal summary judgment burden on this issue. Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts"; Plaintiff bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586-87 (citing FED. RULE CIV. P. 56(e)). Plaintiff has not demonstrated the existence of a genuine issue of material fact. I therefore recommend that the Court find that Deputy Ornelas is entitled to summary judgment.

**D.    Whether the Court should appoint a legal aid to act as interpreter for Plaintiff.**

Plaintiff has also moved that this Court appoint legal aid Roberto M. Garcia, a fellow inmate, to act as his legal aid and interpreter, by his motion filed December 17, 2002 *(Doc. 64)*. Plaintiff has pointed to no authority, and this Court has found none, to support his motion. Therefore, I recommend that the Court find that Plaintiff's Motion for Order to Appoint Interpreter is not well-taken and should be DENIED.

## RECOMMENDED DISPOSITION

I recommend GRANTING Defendant Cass Mason's Motion for Summary Judgment on Qualified Immunity filed October 1, 2002 *(Doc. 52)*, Defendant Pete Montez' Motion for

Summary Judgment filed October 2, 2002 *(Doc. 54)*, and Defendant Daniel Ornelas' Motion for

Summary Judgment on the Martinez Report filed September 27, 2002 *(Doc. 51)*.  I further

recommend DENYING Plaintiff's Motion for Order to Appoint Interpreter filed December 17,

2002 *(Doc. 64)*.  Timely objections to the foregoing may be made pursuant to 28 U.S.C.

§636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and

recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such

proposed findings and recommendations with the Clerk of the United States District Court, 333

Lomas Blvd. NW, Albuquerque, NM 87102.  A party must file any objections within the ten day

period allowed if that party wants to have appellate review of the proposed findings and

recommendations.  If no objections are filed, no appellate review will be allowed.


_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**